314 So.2d 304

**Kenneth Charles GILLOGLY**

**v.**

**STATE.**

**1 Div. 480.**

Court of Criminal Appeals of Alabama.

March 18, 1975.

Rehearing Denied April 22, 1975.

M. A. Marsal and B. Nicholas Kearney, Mobile, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

Murder in the first degree: sentence, life imprisonment.

The prosecution's main witness was an accomplice, Melvin Summerlin. During his cross-examination counsel for the defendant asked of Summerlin, as follows:

"Q  * * *.  Have you ever signed a statement as to what you have just testified?

"A  Yes, sir.

"Q  You have?

"A  Yes.

"Q  And who was the Officer that copied it down?

"A  I don't know.  I don't remember who copied it down.  Some lady.

"Q  Some lady?  And when was this?

"A  This was awhile back.

"Q  Uh huh.  How long ago?

"A  I don't remember the date.

"Q  Well, how long ago?  You said some while back.  Two months ago, three months ago, what month was it?

"A  It was in January.

"Q  In January.  So, in January your conscience told you to testify in this case, is that right?

"A  Yes, sir.

"Q  Yes, sir.  And not when you got the subpoena like you just told this jury?

"A  You asked me did I—when did I decide to—I said my conscience told me to do it all along.  I decided to do it when this subpoena came.  In other words, what I am saying is my final decision is in.

"Q  All right.  At the time you gave a statement in January, tell us the names of the law enforcement officers that were there?

"A  Ralph Jordan.

"Q  Uh huh.

"A  Obie Singletary; one of the Florida men.

"Q  One of the Florida men?

"A  The D.A., Mr. Graddick.

"Q Uh huh. And whom else?

"A And Captain Kater Williams.

"Q And do you have a copy of that statement?

"A Do I have a copy of it?

"Q Yes, sir.

"A No, sir.

"MR. MARSAL: All right. Now, I now ask the Court to ask the district attorney's office to furnish me with a copy of that statement.

"MR. GRADDICK: Judge, I object to it. It's a Court's investigation. It's privileged communication between the police officer and the district attorney; it's part of our work product, and it may involve some other crime that may have been committed in the investigation, and no proper predicate has been laid in order to produce that statement.

"MR. MARSAL: If the Court pleases, it's elementary that I have a copy of any statement that any witness has made."

After extended argument the trial court, at R. 330, denied defense motion. In Husch v. State, 211 Ala. 274, 100 So. 321, the court observed:

" * * *, if the solicitor had had such a statement in his possession, defendant could have required its production by a rule of the court if he thought it was favorable to him."

In Strange v. State, 43 Ala.App. 599, 197 So.2d 437, we approved the lower court's ordering the prosecution to furnish a statement made by an accomplice to a state agent, one Sims. We there cited, with approval, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.

On authority of *Brady*, supra, it is necessary for us to reverse the trial court below for the refusal of the statement which was obviously given to the state agents in this case.

In view of the need for a new trial we consider that with respect to the defendant's own inculpatory statement, which was admitted into evidence through the testimony of state witness, Riddle, there should be a closer scrutiny as to whether the *Miranda* warnings given by other police officers were of recent enough origin to have a continuing effect upon the defendant at the time he made the inculpatory statement to witness Riddle.

For the error pointed out above the judgment below is reversed and cause is remanded for trial de novo.

Reversed and remanded.

TYSON, DeCARLO and BOOKOUT, JJ., concur.

HARRIS, J., concurs in result.