McMILLAN, Judge.
The appellant was convicted of the capital offense of murder during a robbery in the first degree or attempt thereof. See § 13A-5-40(a)(2), Code of Alabama 1975. Following a sentencing hearing, the jury recommended that he be sentenced to life imprisonment without parole. Thereafter, the trial court sentenced him to life imprisonment without parole.
*1246 The appellant argues that he was denied due process of the law, a fair trial, and the effective assistance of counsel because, he says, he was denied the right to discuss the case, prior to trial, with the State’s witnesses. Specifically, he contends that, because of a letter sent by the district attorney’s office to prospective State witnesses, several of these witnesses were reluctant to discuss the case with defense counsel, “because of the letter totally or partially”. The appellant submits that Roger Marler, a prospective State witness, who was hunting with his two sons when he stumbled upon the victim’s body, indicated that he was unwilling to discuss the case with defense counsel, without the prosecutor’s being present, although he had known defense counsel for some time. Appellant contends that this witness testified that the letter was part of his reason for his reluctance to discuss the case with defense counsel. The appellant also says that John Hempfleng, a prospective State witness, to whom the appellant allegedly sold a weapon owned by the victim, refused to discuss the case with defense counsel because of the district attorney’s letter.
The record indicates that the appellant filed a motion concerning this matter on the morning of trial. Prior to trial, the court heard evidence from Roger Marler concerning this matter, and it denied the motion. During the hearing on this pretrial motion, defense counsel indicated that there was another individual on the State’s list of witnesses who had refused to talk to him. However, the record indicates that that named individual did not testify at trial. In denying the motion, the trial court noted that defense counsel had had ample time to file this motion, if he believed it to be meritorious, but instead had waited until the day of trial for its filing. Therefore, the trial court concluded that the defense had not been diligent in presenting the motion, and denied it. Subsequently, during trial, John Hempfleng testified, at which time this issue was raised again, and a motion was denied thereafter by the trial court on these grounds. Thus, the appellant submits that his ability to prepare for trial, his right to a fair trial, and his rights to due process were violated by this letter. Furthermore, he argues that his right to effective assistance of counsel was taken away, as defense counsel, he says, was unable to discuss the case with several of the State’s witnesses because of the letter.
The record contains a copy of the letter sent by the district attorney to witnesses expected to be subpoenaed for testimony in this trial. It contained the following language:
“Between now and the time of trial, you may be contacted by an attorney representing the defendant. He may ask you for an oral statement, written statement, or tape recorded statement. Should this occur, you may refuse to discuss the case with him if you wish. Should you decide to discuss the case, you may require that someone from the District Attorney’s Office be present or that any discussion take place in the District Attorney’s Office. If you decide to discuss the case, we request that you do so with a member of the District Attorney’s staff present.”
Thus, the letter contained a “request” by the district attorney that the witnesses require someone from the district attorney’s office to be present when discussing the case with the defense counsel. The letter did not order the witnesses to do so.
The record indicates that Marler testified that his decision not to talk with defense counsel without the presence of an employee of the district attorney’s office was based partially on the letter. However, Marler indicated that his motivation was also because he believed he would feel more comfortable if a member of the district attorney’s office was present. Hemp-fleng, on the other hand, testified during the trial, on cross-examination by the defense counsel, as follows:
“[Defense Counsel]: Well, let me ask you this: Did you, were you willing to discuss the case with me?
“A. No, sir.
“Q. And why was that?
“A. I didn’t want to discuss it without someone with us. I felt like I may — I *1247 don’t know, I just — I didn’t want to jeopardize anything. I didn’t want, you know—
“Q. Had you received a letter from the District Attorney’s Office here in Lee County before that about testifying?
“A. Before you called me?
“Q. Yes, sir.
“A. Yes, sir, I had.
“Q. Did it have anything to do about with you talking to the defense lawyer?
“A. Yes, sir, it said that I may refuse if I wish to speak with the attorney, his attorney, if another attorney, the D.A. or such that was with me, if I preferred.
“Q. Was that the basis on which you refused to talk to me?
“A. Yes, sir.”
Thus, the witness clearly indicated that he based his refusal to talk to defense counsel on the district attorney’s letter. It is unclear whether he would have refused to talk to defense counsel if he had not received the letter.
“Certainly the prosecutor may not prevent a witness from giving a statement to the defense attorney. Any defendant has the right to attempt to question any witness prior to trial if he so desires in the absence of intimidating influence. However, by the same token, any witness has an attending right to refuse to be so interviewed. Golson v. State, 34 Ala.App. 396, 40 So.2d 725 (1949) and cases cited there; see also Veith v. State, 48 Ala.App. 688, 267 So.2d 480 (1972) and eases cited therein.”
Hill v. State, 366 So.2d 296, 312 (Ala.Cr.App.1978), affirmed, 366 So.2d 318 (Ala.1979). “[B]oth sides have the right to interview witnesses before trial. See United States v. Cook, 608 F.2d 1175, 1180 (9th Cir.1979), cert. denied, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980). Absent a fairly compelling justification, the government may not interfere with defense access to witnesses. Id.; accord, United States v. Scott, 518 F.2d 261, 268 (6th Cir.1975).” United States v. Black, 767 F.2d 1334, 1337 (9th Cir.1985), cert. denied, 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985).
Thus, in Gregory v. United States, 369 F.2d 185 (D.C.Cir.1966), a prosecutor sent to prospective witnesses a letter in which he “ ‘instructed all the witnesses that they were free to talk to anyone they like,’ but told them that ‘it was his advice that they not speak to anyone about the case unless [he] was present.’ ” Id. at 187. In determining that the prosecutor’s letter to prospective witnesses had denied the defendant of a fair trial, the court stated:
“The purpose of 18 U.S.C. § 3432 requiring that in capital cases the defendant be furnished a list of names and addresses of the witnesses to be called by the Government is to assist defense counsel in preparing the defense by interviewing the witnesses. Witnesses, particularly eyewitnesses, to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them. Here the defendant was denied that opportunity which, not only the statute, but elemental fairness and due process required that he have. It is true that the prosecutor stated he did not instruct the witness not to talk to defense counsel. He did admit that he advised the witnesses not to talk to anyone unless he, the prosecutor, were present.
“We accept the prosecutor’s statement as to his advice to the witnesses as true. But we know of nothing in the law which gives the prosecutor the right to interfere with the preparation of the defense by effectively denying defense counsel access to the witnesses except in his presence. Presumably the prosecutor, in interviewing the witnesses, was unencumbered by the presence of defense counsel, and there seems to be no reason why defense counsel should not have an equal opportunity to determine, through interviews with the witnesses, what they know about the case and what they will testify to. In fact, Canon 39 of the Canons of Professional Ethics makes explicit the propriety of such conduct: ‘A lawyer may properly interview any witness or prospective witness for the opposing side in any civil or criminal action without the *1248 consent of opposing counsel or party.’ Canon 10 of the Code of Trial Conduct of the American College of Trial Lawyers is an almost verbatim provision.
[[Image here]]
“A criminal trial, like its civil counterpart, is a quest for truth. That quest will more often be successful if both sides have an equal opportunity to interview the persons who have the information from which the truth may be determined. The current tendency in the criminal law is in the direction of discovery of the facts before trial and elimination of surprise at trial. A related development in the criminal law is the requirement that the prosecution not frustrate the defense in the preparation of its case. Information favorable to the defense must be made available to the defense. Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Reversals of convictions for suppression of such evidence and even for mere failure to disclose, have been commonplace. It is not suggested here that there was any direct suppression of evidence. But there was unquestionably a suppression of the means by which the defense could obtain evidence. The defense could not know what the eyewitnesses to the events which ensued were to testify to or how firm they were in their testimony unless defense counsel was provided a fair opportunity for interview. In our judgment the prosecutor’s advice to these eyewitnesses frustrated that effort and denied appellant a fair trial.”
Id. at 187-89.
Similarly, in Alabama, the Alabama Supreme Court has noted the importance of allowing and providing a full and thorough discovery to the defense in capital cases. See Ex parte Monk, 557 So.2d 832 (Ala.1989) (in which the court also noted the numerous Alabama capital cases which have been reversed pursuant to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); id. at footnote 1). In Ex parte Monk the Alabama Supreme Court stated:
“The capital case is ‘sufficiently different’ from other cases, because there is no other criminal case in which the crime is murder and the possible punishment is death or life imprisonment without parole. See: § 13A-5-39 et seq. Justice Brennan explained how the Justices of the United States Supreme Court view capital cases, as follows: ‘When the penalty is death, we, like state court judges, are tempted to strain the evidence and even, in close cases, the law in order to give a doubtfully condemned man another chance.’ Furman v. Georgia, 408 U.S. 238, 297, 92 S.Ct. 2726, 2756, 33 L.Ed.2d 346 (1972). The hovering death penalty is the special circumstance justifying broader discovery in capital cases.”
Id. at 836-37.
The federal court in Gregory v. United States, supra, made it clear that, although the prosecutor merely “advised” the witnesses not to talk to anyone unless he was present, his letter doing so nonetheless might have hampered the defendant in formulating his defense. Thus, in United States v. Black, 767 F.2d 1334 (9th Cir.1985), cert. denied, 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985) a prosecutor sent prospective witnesses a letter stating: “At some point prior to trial you may be contacted by an attorney on behalf of the defendant. You may speak to this person if you choose, but have no obligation to do so.” The letter in no way “advised” or “requested” that a member of the district attorney’s office be present if a witness did speak to defense counsel. The court distinguished Gregory v. United States, supra, stating:
“In Gregory, the prosecutor advised the witnesses not to talk to anyone unless he was present. The court held that such advice effectively denied defense counsel access to witnesses except in the presence of the prosecutor, and consequently denied the defendant a fair trial....”
“[The defendant’s] reliance on Gregory is misplaced. In the present case, the prosecutor did not insist on being present at the defense interview; rather, he merely advised the witnesses of their right to decline the defendant’s request *1249 for an interview. Unlike the advice given in Gregory, the prosecutor’s letter constituted a correct statement of the law and was not improper.”
Id. at 1337-38. The court in United States v. Black, supra, further noted that the witnesses voluntarily chose not to be interviewed and that “[w]hile the prosecution may not interfere with the witness’s free choice to speak with the defense, we agree with courts in other circuits that merely informing the witness that he may decline the interview is not improper.” Id. at 1338.
Although this exact matter has not been discussed by Alabama case law, we find persuasive the cases of Gallman v. State, 29 Ala.App. 264, 195 So. 768 (1940), and Griffin v. State, 383 So.2d 873 (Ala.Cr.App.1980), cert. denied, 383 So.2d 880 (Ala.1980) in evaluating the importance of a defendant’s right to access for interviewing witnesses. In Gallman v. State, this court held that, where the defendant asked the court for permission to talk to their witness after the State had rested its case, the trial court “abused its discretion in permitting counsel for the defendant to confer with the witness, Sam Jordan, only in the presence of the State’s solicitors.” Gallman v. State, 29 Ala.App. at 266, 195 So. at 770.
“It is a mistake of a serious nature for a trial court, or opposing counsel, to assume or intimate that counsel for the defendant is not at full liberty to question, whenever he sees fit, any person who knows or is presumed to know the facts attendant upon the commission of the offense with which the client is accused. It is his solemn, sworn duty to ascertain, as far as he can, what the evidence is, and his duty is not at an end when he has examined, no matter how exhaustively, his client; he must see and talk with the witnesses. Sharwood’s Legal Ethics, p. 121; Elliott’s General Practice, Chapt. 1, Sections 1-5; Chitty’s Practice, Vol. 2, pages 21 and 53.”
Gallman v. State, 29 Ala.App. at 267, 195 So. at 770. (Emphasis added.) Similarly, in Griffin v. State, supra, this court held as error a trial court’s requirement that defense counsel obtain the permission of the trial court before speaking with witnesses subpoenaed by the State.
Based on the above-stated authority, and because of the serious nature of this case, as well as John Hempfleng’s testimony that he made his decision not to speak with defense counsel based on the district attorney’s letter, the conviction is due to be reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
All Judges concur.