## HUSCH v. STATE. (7 Div. 431.)

(Supreme Court of Alabama. May 15, 1924.)

1. Homicide ⟨⟨⟩⟩203(3)—Statement held properly admitted as dying declaration.

Statement by deceased, after stating that he was going to die, and believed it to be his dying statement, *held* properly admitted as dying declaration.

2. Criminal law ⟨⟨⟩⟩404(4)—Deceased's clothing should not be received in evidence unless it tends to shed light on material inquiry.

Clothing worn by deceased at time of killing should not be received in evidence unless it tends to shed light on some material inquiry.

3. Criminal law ⟨⟨⟩⟩404(4)—Shirt and trousers worn by deceased at time of killing admissible if penetrated by bullet.

Shirt and trousers worn by deceased at time of killing *held* admissible on issue whether he was facing defendant or turning to flee when second shot was fired, if bullet penetrated them.

4. Criminal law ⟨⟨⟩⟩1169(1)—Admission of deceased's belt not penetrated by bullet held harmless.

Admission of belt worn by deceased at time of killing *held* harmless, though not penetrated by bullet, in view of admission of shirt and trousers thus penetrated.

5. Homicide ⟨⟨⟩⟩158(1)—Defendant's statement of purpose to have "reckoning" with deceased held properly admitted.

In homicide prosecution, defendant's statement that he was at witness' house to have "reckoning" with deceased *held* properly admitted, it being for jury to say whether he meant it in primary sense of word, as counting or computing, or figuratively in sense of adjustment of reward or penalty on basis of merit, in which sense it is commonly used as prophecy or threat of punishment.

6. Homicide ⟨⟨⟩⟩309(1)—Charge on manslaughter held properly refused as not excluding malice, and as argumentative.

Charge that, if deceased struck defendant, and latter, being thus suddenly aroused, killed deceased, but as soon as he had time to reflect was sorry, and tried to take deceased home and have him cared for, he could be guilty of nothing higher than first-degree manslaughter, *held* properly refused, as not excluding malice, and as argumentative.

7. Criminal law ⟨⟨⟩⟩829(1)—Refusal of charges covered by charges given not error.

Refusal of charges covered by charges given is not error.

8. Criminal law ⟨⟨⟩⟩814(3)—Charges as to presumption from failure to offer second dying declaration in evidence held properly refused as not supported by evidence.

Charges, in homicide prosecution, that state's failure to offer in evidence second written dying declaration in solicitor's possession authorized presumption that statement was less favorable to state than that in evidence

*held* properly refused as not supported by evidence of solicitor's possession thereof, knowledge of its existence, or even of its having been made.

**9. Criminal law �köw778(10)—Charges as to presumption from failure to offer second dying declaration held properly refused in view of defendant's right to require its production.**

Charges as to presumption from prosecution's failure to offer second dying declaration in evidence that it was less favorable to state than that in evidence *held* properly refused, as defendant, by rule of court, could have required production of statement if in solicitor's possession.

**10. Criminal law �köw778(2)—Refused charge permitting presumption that deceased waited for defendant held purely argumentative.**

In murder prosecution, refused charge that, if deceased came to forks of road 30 minutes before defendant, and approached and provoked difficulty with latter, jury could presume that deceased waited for defendant, *held* purely argumentative.

**11. Criminal law ⊦köw761·(3)—Homicide ⊦köw300 (14)—Charge on self-defense, omitting necessity for killing, and assuming existence of peril, properly refused.**

Charge on self-defense, omitting apparent or real necessity for killing, and assuming existence of peril, was properly refused.

**12. Homicide ⊦köw300(12)—Charge submitting self-defense properly refused as omitting consideration of evidence.**

In murder prosecution, charge that self-defense was entirely with jury under law as given by court *held* properly refused as omitting consideration of evidence.

**13. Criminal law ⊦köw815(1)—Charge on consideration of dying declaration held properly refused as argument based on partial facts.**

Charge that dying declaration should be considered in light of fact that deceased was not cross-examined, whether he told all the facts, and that he made another statement thereafter, *held* properly refused as argument based on selected and partial facts.

**14. Criminal law ⊦köw811(1)—Charge that dying declarations must be considered with great caution properly refused as singling out particular evidence for suspicion.**

Refused charge that law requires dying declarations to be considered with great caution *held* improper as singling out particular evidence for suspicion, and tending to mislead jury.

**15. Criminal law ⊦köw763, 764(21)—Credibility of dying declaration should not be impeached and weight impaired by instruction.**

Jury should be instructed that dying declaration should be considered in light of circumstances under which made, and given such credence as entitled to in their judgment, but impeachment of its credibility and impairment of its weight are matters for argument by counsel, and not for instruction by court.

Appeal from Circuit Court, De Kalb County; W. W. Haralson, Judge.

James Husch, alias, etc., was convicted of murder in the first degree, and appeals. Affirmed.

These requested charges were refused to the defendant:

"(3) I charge you that if you believe from the evidence that Black struck Husch on the head with a rock and knocked him back against his buggy, and that Husch, being thus suddenly aroused, killed Black by shooting him, but as soon as he had time to reflect was sorry for his act, and tried to take Black home and have him cared for, then he could be guilty of nothing higher than manslaughter in the first degree."

"(8) I charge you that if you believe from the evidence in this case that Black made a dying statement at the hospital after making the one in evidence, then you have a right to presume that it was less favorable to the state than the one produced in evidence.

"(9) I charge you that, where a party has in its possession certain testimony, such as a dying declaration of a man now deceased, and which statement it would be allowed to use if it is desired to do so, then the failure to produce such statement or evidence is open for your consideration, and you are entitled to presume that if the statement were produced it would be less favorable to the state than the one it did produce.

"(10) I charge you that, if you believe from the evidence in this case that Black came to the forks of the road 30 minutes before Husch did, and that he approached Husch and provoked a difficulty with him, then you would be entitled to presume that Black waited at the forks of the road for Husch.

"(11) It is the law that, where one party to a suit is in possession of evidence which is competent and material to the issues being tried, then it is the duty of the party thus in possession of such evidence to produce it in court, and if it fails to do so then the jury are entitled to presume that the evidence thus kept out of court would be unfavorable to the party in possession of it."

"(18) I charge you that there is in evidence what is termed a dying declaration. The law says that such statements are competent for your consideration which you may consider in the light of all the evidence, but you should consider the dying declaration in the light of the fact that the deceased was not cross-examined by any one, and whether or not he has told all the facts, and you may also consider the further fact that he made another and separate statement, and after this one was made, and had it reduced to writing, if you believe such second statement was made and reduced to writing."

Isbell & Scott, of Ft. Payne, for appellant.

It was error to refuse charges bearing upon the second dying declaration of deceased. 16 Cyc. 1062; Sewell v. Nolen Bank, 204 Ala. 93, 85 South. 375; McMickens v. State, 16 Ala. App. 78, 75 South. 626; Pollak v. Harmon, 94 Ala. 420, 10 South. 156; Carter v.

Chambers, 79 Ala. 231; Bates v. Morris, 101 Ala. 282, 13 South. 138; Patton v. Rambo, 20 Ala. 485; Jackson v. State, 77 Ala. 18; Crawford v State, 112 Ala. 1, 21 South. 214. A dying declaration should be received and weighed by the jury with the greatest deliberation. 21 Cyc. 992; Brown v. State, 150 Ala. 25, 43 South. 194; Shell v. State, 88 Ala. 14, 7 South. 40.

Harwell G. Davis, Atty. Gen., for the State.

No brief reached the Reporter.

SOMERVILLE, J. [1] Several witnesses testified that the deceased stated just before he made the written statement which was received in evidence as his dying declaration that he was going to die, and the declaration itself was prefaced by the statement that he believed it to be his dying statement. On this predicate the statement was properly admitted as a dying declaration. 14 Michie's Digest, 114, § 182.

[2] The trial court admitted in evidence, over defendant's objection, the shirt, trousers, and belt worn by deceased at the time he was killed. Such articles should never be offered or received in evidence unless they "have some tendency to shed some light upon some material inquiry." Rollings v. State, 160 Ala. 82, 86, 49 South. 329; Pearson's Case, 97 Ala. 219, 12 South. 176; A. G. S. R. R. Co. v. Bell, 200 Ala. 562, 76 South. 920.

[3] There was a controversy in this case as to the position of the deceased when defendant fired the second shot—that is, whether he was facing defendant, or had turned to flee. Necessarily the lethal bullet penetrated the clothing of deceased, and so far as the record shows it may have passed through both shirt and trousers. If so, these garments were properly admitted in evidence. Terry v. State, 203 Ala. 99, 82 South. 113, and cases cited supra.

[4] It may be that there was no justification for the introduction of the belt, but in any case it could do no harm when viewed in connection with the other clothing, and can furnish no ground for a reversal of the judgment.

[5] The homicide was committed in August, and the state was allowed to show that one night in the preceding May defendant went to the witness' house and said he was down there "to have a reckoning with Black [the deceased]." It is insisted for defendant that this language does not import a threat, and was not admissible as such. The primary meaning of "reckoning" is a counting or computing; but it is also used figuratively in the sense of an "adjustment of reward or penalty on the basis of merit." New Standard Dictionary. In the latter sense it is commonly and frequently used as a prophecy or a threat of punishment, and it was for the jury to say what defendant meant by its use on this occasion, in the light of the evidence before them. We think the statement was properly admitted.

Complaint is made of other rulings on the evidence. We have examined all of them, and find no prejudicial error.

[6] Refused charge 3 sought to exclude a conviction of murder without excluding the existence of malice, and was also argumentative.

[7] Refused charges 5 and 12 correctly distinguished between murder and manslaughter in the first degree, but they were specifically covered by given charge 5, and also by the oral charge.

Refused charge 6 was fully covered by the oral instructions.

[8, 9] Refused charges 8, 9, and 11, are based on the theory that deceased made a second dying declaration in writing which was in the possession of the prosecution, and sought to instruct the jury that the failure of the prosecution to offer that statement in evidence authorized them to presume that it was less favorable to the state than the dying declaration in evidence. There was no evidence, however, that the solicitor had any such statement in his possession, or had ever even heard of its existence, or, indeed, that it was made in writing. One witness stated merely that "an officer came to the hospital and took his [deceased's] testimony in regard to the matter while we were preparing for the operation." Who the officer was, or what kind of an officer, or at whose instance he came, does not appear. Under such circumstances no presumption could arise as to the character of the statement referred to. Jackson v. State, 77 Ala. 18 (4). Moreover, if the solicitor had had such a statement in his possession, defendant could have required its production by a rule of the court if he thought it was favorable to him.

[10] Refused charge 10 was purely argumentative.

Refused charge 14 was faulty in several details, but its entire substance and principle were fully and fairly covered by the oral charge.

[11] Refused charge 15, on the law of self-defense, omits the predicate of a necessity, apparent or real, for the killing, and assumes the existence of peril.

[12] Refused charge 16, on self-defense, instructs that the matter "is entirely with the jury under the law as the court has given it to you." It omits a consideration of the evidence.

Refused charges 15, 16, and 17, in so far as they invoked the principles of self-defense, were fully, fairly, and correctly covered by the oral charge.

[13] Refused charge 18, on the mode of considering dying declarations, was an argument based on selected and partial facts,

properly to be made by counsel, and not by the trial judge.

[14, 15] Refused charge 19, that "the law requires dying declarations to be considered with great caution," is not a proper instruction, as was expressly held in Brown v. State, 150 Ala. 25, 43 South. 194. The same ruling has been made as to the consideration of admissions by a defendant. Carwile v. State, 148 Ala. 576 (B), 39 South. 220. This does not deny the existence of the factors which weaken the reliability of dying declarations, and impair their value as evidence, and which have been often pointed out by courts and text-writers. See, especially, Shell v. State, 88 Ala. 14, 17, 7 South. 40; 1 Greenl. on Ev. (16th Ed.) 253, § 162; 30 Corp. Jur. 261, § 503; Id. 279, 280, § 521. And it has often been said that dying declarations should be received and weighed with caution. Shell v. State, supra; Kennedy v. State, 85 Ala. 326, 331, 5 South. 300; Justice v. State, 99 Ala. 180, 181, 13 South. 658; Parker v. State, 165 Ala. 1, 10, 51 South. 260. The jury should, of course, be instructed that a dying declaration should be considered in the light of the circumstances under which it was made, and should be given such credence as in their judgment it is entitled to receive; but the impeachment of its credibility and the impairment of its weight are matters for argument by counsel, and not for instruction by the trial judge. The objection to the instruction under consideration is that it singles out particular evidence for suspicion, and its tendency is to mislead the jury.

It is to be observed, however, that the principle invoked was in fact given to the jury in charge 20, viz. "that dying declarations are admitted in evidence out of necessity, but should be admitted and considered with real caution in connection with all the evidence."

For the reasons stated, all of the charges above reviewed were refused without error.

We find no prejudicial error in the record, and the judgment will be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and MILLER, JJ., concur.