Samuel H. Monk II, Judge of the Seventh Judicial Circuit of Alabama, entered two identical discovery orders in the pending capital cases of State of Alabama v. David Michael Carden andState of Alabama v. Preston Andrew Ansley on April 10, 1989, which resulted in this proceeding. On April 17, 1989, Chief Assistant District Attorney Joseph D. Hubbard, filed a motion to vacate the discovery order in each case. On May 18, 1989, Judge Monk held a joint hearing on the motions to vacate, which he denied by order on May 19, 1989.
Hubbard filed his petition for writ of mandamus in the Court of Criminal Appeals on June 14, 1989. 553 So.2d 145. On July 11, 1989, the Court of Criminal Appeals granted the petition for writ of mandamus, with the following order:
 "It is ordered that the petition for writ of mandamus be and the same is hereby granted. The record before this Court shows that the trial judge's order that the district attorney turn over his entire file was arbitrary in that it was based on a general policy of the Attorney General of Alabama. The trial judge is hereby ordered to comply with the requirements of A.R.Crim.P.Temp. 18 or base his decision for complete and total discovery on the particular circumstances and specific facts of this case."
Judge Monk filed an application for rehearing, which was denied on July 26, 1989.
The issue before this Court is whether the trial judge abused his discretion in issuing the following discovery order in a capital case:
"ORDER REQUIRING ADDITIONAL DISCOVERY
 "The defendant in this case is charged with a capital felony. The undersigned being of the opinion that, this being a capital prosecution, the discovery provisions of Rule 18, Alabama Rules of Criminal Procedure (Temporary) should be deemed to set out only the minimum discovery afforded the defendant as a matter of right, the Court hereby ORDERS as follows:
 "1. Subject to the provisions of Paragraph 2, the Court directs that the District Attorney shall maintain an ongoing 'open file' policy in regard to discovery on the part of the defendant in this case. In so doing, the State, upon written request, shall allow the defendant's attorney(s) full and complete access to all documents, statements, writings, photographs, recordings, evidence, reports or any other file materials in possession of the state, any agent or agency of the *Page 834 
state, or any police agency involved in this case, which is known to exist or which with due diligence could be determined to exist, and to allow said attorney(s) to inspect, test, examine, photograph, or copy the same.
 "2. This Order, however, should not be construed to require the state to disclose any notes, memoranda, writings or documents prepared by the District Attorney or his staff in trial preparation, or to disclose or produce any confidential materials, unless the same would be required to be produced by Rule 18, A.R. Cr.P., or the same would otherwise be discoverable under the dictates of Brady v. Maryland and the cases decided thereunder. Any such items or materials withheld from the defendant by the state shall be presented to the Court for an in camera review at a hearing to be specially set for such purpose. Copies of any materials not required to be given to the defendant shall be placed in a sealed envelope in the custody of the Clerk of Court for preservation for possible review at a later date by the trial court or any appellate court.
 "3. This Order is intended to expedite the case preparation and trial process, as well as to simplify the issues on any appellate review. It should not be construed to bestow on the defendant any absolute rights of discovery not granted by the Constitution of the United States, the Constitution of the State of Alabama, the laws of the United States or the State of Alabama, or case decisions or rules promulgated by any court.
 "4. Any party hereto may seek relief from or modification of any aspect of this Order upon timely request, and the same may be amended from time to time as circumstances dictate."
As previously noted, Judge Monk held a hearing on Hubbard's motion to vacate this order. Hubbard stated during this hearing:
 "The State respects this Court's authority to order additional discovery in certain situations, one of those being if the State fails to comply with the mandates of Rule 18 of the Alabama Temporary Rules of Criminal Procedure. Then I think Your Honor will certainly have the right to order additional discovery. Or in the situation where Your Honor felt like the individual case and the certain circumstances involved in that case because of some unusual situation demanded that the State give to the defense teams further discovery. Then I think Your Honor would have the right to do that, to order further discovery. The State questions Your Honor's authority to, on its own motion, change or augment the discovery process over and above that adopted by the Supreme Court of Alabama in Rule 18." (Tr. 7)
Although Hubbard conceded that in the proper circumstances Judge Monk had the authority to order discovery from the State over and beyond that required in A.R.Crim. P.Temp. 18, he argued that if such an order were entered in a capital case by any circuit judge in the state, that judge's order would entitle any other capital defendant in the state to a similar order. He further objected to the order because it required turning over material in the possession of any investigative agency though not in the possession of the district attorney's office itself. Hubbard did, however, concede that Judge Monk had the authority to order additional discovery from the State over and beyond that required in A.R.Crim.P. Temp. 18 if there was an adequate reason for doing so. He questioned only whether the capital nature of a case constituted an adequate reason for so ordering:
 "I do want to say that Mr. Brooks, I think, made the point that I'm making more eloquently than I have done in stating that the only reason that Your Honor has granted this particular discovery order is because it is a capital case. And I want to make that clear. And I know I've said that several times. But I want everyone here and anybody else who might hear to understand that I don't have any quarrel with Your Honor having the right to order additional discovery in any criminal case except when there is no reason for ordering the discovery except Your Honor's, and I respectfully *Page 835 
use the term, 'whim' to do so because of the nature of the case. There has been no evidence at all that the State's not going to do everything to comply with the Supreme Court rules contained in Rule 18. Your Honor has taken it on himself to issue a broad and expanded order based simply on the type of case involved as opposed to there being any individual situation that has arisen." (Tr. 23-24)
After hearing arguments both from the district attorney and counsel for both defendants, Judge Monk explained his rationale behind the order as follows:
 "First of all, this is not the only circuit in Alabama that's using a similar order. I haven't read those particular orders. I wasn't provided with any; didn't ask for any. But it's my understanding that this is not the only circuit in Alabama that is using an order that is substantially the same as this one. This order was not entered as some whim of the — or by some whim of the Court. It was after a long and involved process of thinking it through in my own mind.
 "In January the Attorney General's Office, a representative of the Attorney General's Office, conveyed a request to the circuit judges assembled in Birmingham, and this request was from Mr. Carnes of the appellate division of the Attorney General's Office, asking that an order such as this be considered by each judge. And there is no question that this order is entered because this is a capital case. And I don't want you to be concerned with it being entered for any other reason. Like it or not we're faced with a situation in this country where the appellate courts, the U.S. Supreme Court, and the Alabama Supreme Court have both said that capital cases are different, they're to be treated differently. So whether you agree with that premise or not, or whether the State agrees with it or not it is — it's reality. So the order was entered because this is a capital case, and it was entered basically at the suggestion of the Attorney General's Office. Their argument being that the majority of capital cases being reversed on appeal — and it's generally not on direct appeal it's generally on collateral attack during habeas corpus proceedings, are being reversed on one of two grounds. One is discovery violations; two, incompetency of counsel. Of course this order was not in any way intended to address the latter situation; it was intended to address the former. The theory behind the order is that if everything's on the table then the defendant will basically see everything and no arguments can be mounted on appeal that there were discovery violations and that evidence was withheld.
 "Now, in that regard let me back up. The State seems to be concerned that this order is bestowing rights upon a defendant that he does not have. It's not the intent of the Court to bestow or attempt to bestow any right on the defendant. Those rights are to be bestowed on the defendant by the Constitution or by appellate court decisions. This Court is only attempting to expand the scope of discovery. And that's why the statement was placed in there that it shouldn't be construed to bestow on the defendant any absolute — and you need to look at the word "absolute" — rights of discovery there, not granted by the Constitution of the United States, the Constitution of the State of Alabama, or case decisions or rules promulgated by any court. So it was not an attempt to bestow on the defendant any right and that statement is in there to make that clear." (Tr. 26-28)
Judge Monk went on to explain that it was his opinion that the court had the power and authority to enter the order that he entered. He assured the district attorney that he intended for safeguards to exist to prevent the State from having to disclose confidential or work product materials. He stated as follows:
 "Now, anything the State feels like shouldn't be delivered to the defendant, of course, is an escape valve and it can be assembled. A hearing can be set, it can be presented to the Court, the Court will review it in camera. If something is required to be produced it can be produced *Page 836 
at that time. If it's not required to be produced we can place it in a sealed envelope. And that was the intent of that, at least the appellate courts have something to review during the initial appellate phases of a capital case and that they do not have to rely on remand to determine a particular issue; or the federal courts would not have to just merely resort to some type of speculation. Of course, the rule clearly — or the order clearly gives the District Attorney the right to protect your work product to the extent that some type of investigatory material produced by your office in preparation of trial would not otherwise be required to be produced by Rule 18 or Brady. It's protected. And again, I just want to stress that the rule is in no way intended to bestow any rights on a defendant. This rule may be — or this order may be totally unworkable and it may well never be entered in another case. It may be modified to some extent and used in another case. At this point I don't know." (Tr. 30-31)
On May 19, 1989, Judge Monk entered identical orders in the two capital cases, denying the motion to vacate the additional discovery orders. His order stated in pertinent part:
 "The Court recognizes and appreciates the State's enunciated concerns. However, the Court disagrees with the assertion that the Order being attacked was entered without authority by the Court.
 "The genesis of the subject order was a suggestion of Ed Carnes, Esquire, Assistant Attorney General, made to the Circuit Judges assembled in Birmingham in January that such an order be considered to alleviate potential post-trial review problems in capital cases. After due consideration, the Court determined that the benefit of such an order far outweighed any potential evil.
 "The State fears the order requires perfection on the part of the State to search out and disclose every scrap of possible evidence or information. It does not. It requires due diligence, or stated another way, a sincere and honest effort.
 "The order does not confer any new 'rights' on the Defendant as those must be conferred by constitution, law or case decision. As such, it, in and of itself, should cause no problems to the State provided due diligence is exercised."
We note at the outset that both parties agree that a circuit judge has the discretionary authority to order additional discovery from the prosecution in "certain situations." Those situations Hubbard characterized as "the situation where Your Honor felt like the individual case and the certain circumstances involved in that case because of some unusual situation demanded that the State give to the defense teams further discovery."
The order granting the writ of mandamus issued by the Court of Criminal Appeals also recognized the authority of circuit judges to grant additional discovery. That order requires Judge Monk "to comply with the requirements of A.R.Crim.P. Temp. 18 or base his decision for complete and total discovery on the particular circumstances and specific facts of this case."
Thus, the question before us here is whether capital cases by their very nature are sufficiently different from other cases to justify the exercise of judicial authority to order discovery from the prosecution as broad as that contained in Judge Monk's order of April 10, 1989. We hold that capital cases are sufficiently different by their very nature, and that the discovery order of April 10, 1989, in these two capital cases was within the discretionary authority of the trial court.
The capital case is "sufficiently different" from other cases, because there is no other criminal case in which the crime is murder and the possible punishment is death or life imprisonment without parole. See: § 13A-5-39 et seq. Justice Brennan explained how the Justices of the United States Supreme Court view capital cases, as follows: "When the penalty is death, we, like state court judges, are tempted to strain the evidence and even, in close cases, the law in order to give a doubtfully condemned man another chance." Furman v. Georgia,408 U.S. 238, 287, 92 S.Ct. 2726, 2751, 33 L.Ed.2d 346 (1972). The hovering death penalty is the special circumstance *Page 837 
justifying broader discovery in capital cases.
In addition, because of the nature of the penalty in a capital case, the sentencing process becomes of utmost importance. For this reason our Alabama statutes provide in a capital case for a "separate sentence hearing to determine whether the defendant shall be sentenced to life imprisonment without parole or to death." § 13A-5-45. At this hearing, under existing constitutional and statutory law, a convicted capital defendant has the right to introduce and have considered at the sentence hearing, by way of mitigation, evidence that reflects upon his life, his character, and the circumstances of the crime. § 13A-5-45; § 13A-5-51; § 13A-5-52. See, Lockett v.Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973
(1978); Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821,95 L.Ed.2d 347 (1987); Eddings v. Oklahoma, 455 U.S. 104,102 S.Ct. 869, 71 L.Ed.2d 1 (1982).
In a capital case the definition of "favorable evidence" expands at the sentencing stage to far beyond what it is at any stage of any other type of criminal proceeding. The Alabama statute provides:
 "(d) Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements. . . .
". . . .
 "(g) The defendant shall be allowed to offer any mitigating circumstance defined in sections 13A-5-51 and 13A-5-52. When the factual existence of an offered mitigating circumstance is in dispute, the defendant shall have the burden of interjecting the issue, hut once it is interjected the state shall have the burden of disproving the factual existence of that circumstance by a preponderance of the evidence."
Code 1975, § 13A-5 — 45.
This statutory mandate that a defendant shall be allowed to offer evidence of mitigating circumstances is another reason why broad discovery must be allowed. The prosecutor cannot screen files for potential mitigating evidence to disclose to the defense counsel because, "[w]hat one person may view as mitigating, another may not." Dobbert v. Strickland,718 F.2d 1518, 1524 (11th Cir. 1983), cert. denied, 468 U.S. 1220,104 S.Ct. 3591, 82 L.Ed.2d 887 (1984).
The Supreme Court, in Brady v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), established that a prosecutor has a constitutional duty to disclose evidence favorable to the defendant. This duty extends to evidence favorable on the issue of sentencing as well as on the issue of guilt. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194,1196-97, 10 L.Ed.2d 215 (1963).
It is clear from the record that the additional discovery order entered by Judge Monk was for the purpose of reducing the likelihood of post-conviction litigation and reversals onBrady grounds and on the basis of advice and a recommendation of the capital litigation division of the Alabama attorney general's office. Many Alabama capital cases have been reversed in state and federal collateral proceedings for Brady problems.[1]
The order issued by Judge Monk is an attempt to prevent these two Alabama capital cases from being set aside onBrady grounds. It includes safeguards for the prosecutor. The order provides:
 "Any such items or materials withheld from the defendant by the state shall be presented to the court for an in camera *Page 838 
review at a hearing to be specially set for such purpose. Copies of any materials not required to be given to the defendant shall be placed in a sealed envelope in the custody of the Clerk of Court for preservation for possible review at a later date by the trial court or any appellate court."
Therefore, the file is not in danger of being turned over to defense counsel in an indiscriminate manner. The trial judge has provided both a safeguard as to the turning over of the evidence and due process to the defendant, who has a right to discover exculpatory evidence that the prosecutor may have.
For the above stated reasons the Court of Criminal Appeals should have denied the writ of mandamus.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.
STEAGALL and KENNEDY, JJ., dissent.
[1] See: Dobart v. Johnson, No. 84-0495-C (S.D. Ala. June 23, 1986); Ex parte Raines, 429 So.2d 1111 (Ala. 1982), cert.denied, 460 U.S. 1103, 103 S.Ct. 1804, 76 L.Ed.2d 368 (1983);Raines v. Smith, No. 83-P-1080-S, 1983 WL 3310 (N.D. Ala. Oct. 3, 1983); Ex parte Womack, 541 So.2d 47 (Ala. 1988); Ex parteGeeslin, 505 So.2d 1246 (Ala. 1986); Ex parte Kimberly,463 So.2d 1109 (Ala. 1984); Ex parte Watkins, 509 So.2d 1064 (Ala. 1984); Kircheis v. Long, 425 F. Supp. 505 (S.D.Ala. 1976),affirmed, 564 F.2d 414 (5th Cir. 1977). See also: the dissent in Ex parte Bradley, 494 So.2d 772 (Ala. 1986), cert. denied,480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987). See further: cases in which Brady questions were raised, Ex parteFirth, 493 So.2d 405 (Ala. 1986); Ex parte Kennedy,472 So.2d 1106 (Ala. 1984), cert. denied, 474 U.S. 975, 106 S.Ct. 340,88 L.Ed.2d 325 (1985); Ex parte Duncan, 456 So.2d 362 (Ala. 1984).