926 So.2d 361 (2004)
James Dwight McKISSACK
v.
STATE of Alabama.
CR-02-1845.
Court of Criminal Appeals of Alabama.
April 30, 2004.
Rehearing Denied June 18, 2004.
Lindsey Mussleman Davis, Florence, for appellant.
William H. Pryor, Jr., atty. gen., and John M. Porter, asst. atty. gen., for appellee.
BASCHAB, Judge.
The appellant, James Dwight McKissack, was convicted of murder, a violation of § 13A-6-2(a)(1), Ala.Code 1975. The trial court sentenced him to serve a term of life in prison. The appellant filed a motion for a new trial, which the trial court summarily denied. This appeal followed.
The appellant argues that the trial court improperly denied his request that the grand jury proceedings in his case be preserved. In support of his motion, which he filed before the grand jury proceedings occurred, he asserted that he and Michael Craig had been arrested and charged with manslaughter and that they had both made statements on the night they were arrested about their involvement in the offense. The appellant stated that he, Craig, and the victim had been drinking and shooting his revolver; that they had started playing a game of Russian roulette; that they had all fallen asleep in their vehicle; that he was awakened by a *362 gunshot and saw the victim in the seat beside him bleeding from his head; and that he had awakened Craig. Craig stated that the appellant and the victim had been playing Russian roulette; that he had fallen asleep; and that the appellant had awakened him and told him that the victim had shot himself. The appellant also asserted that, during the preliminary hearing, an investigator testified that he believed that the appellant intentionally shot the victim because the preliminary autopsy report indicated that there was not any soot or stippling around the gunshot wound like a person would expect from a contact wound. He further asserted that his counsel had talked to the medical examiner who had performed the autopsy of the victim's body; that the medical examiner had stated that he had not been able to determine the manner of the victim's death; that, although there was not any soot or stippling around the gunshot wound, there was an abrasion ring, which was consistent with the barrel of the revolver having been placed against the skin; that the trajectory of the bullet made him wonder whether or not the wound was self-inflicted; and that, in his report, he had listed the manner of death as being "`inconclusive.'" (C.R. 20.) Finally, he concluded:
"It is particularly important to transcribe the proceedings in a case like this, where the state is considering elevating the charges to murder, and the state's main witness, [the medical examiner], has told counsel on two occasions that he cannot determine the manner of death. If the state has a witness that would contradict [the medical examiner's] testimony, or presents forensic evidence that would do so, or if [the medical examiner], himself, gives different testimony, counsel should be entitled to a verbatim record of it, or of anything else that is said. Anything else would be unfair and a violation of Due Process."
(C.R. 26.)
During a hearing on the appellant's motion, defense counsel stated:
"At this point, we're just asking that [the grand jury testimony] be preserved. I think that before we would be entitled to it we'd have to make a threshold showing under the caselaw, and while I can make a showing, I think, which would justify preserving it, we can only make that showing really at trial as to whether or not we're entitled to discovery of any kind of transcript. Right now we're just asking that it be preserved.
"....
"... And I'm not saying that it needs to be done in every case, but in this particular case where we think there is a good chance that the district attorney is gonna elevate the charges and attempt to get an indictment on murderI don't think on capital murder but I can't be one-hundred percent for sure, and in which I spoke to the medical examiner on a number of occasions and he's indicated that he cannot determine the manner of death, that there are some things that are consistent with it being a contact wound and self-inflicted wound. This is the Russian roulette case, and some things which indicate that it's intentional. Under those circumstances and under the circumstances there's some testimony that came out at the preliminary hearing by the investigator which we have concerns about, all we're asking for is that it be preserved. And I know that there is issues about secrecy of grand jury proceedings. We're not asking for it to be divulged. We're not even asking that we get it. We're asking that it be preserved so that if the issue comes up, and we think it will, as *363 to whether or not a witness has testified honestly, that we'll have access to that information."
(R. 6-9.) Subsequently, defense counsel explained to the trial court, ex parte, that she was concerned about potential inconsistencies in the testimony of the medical examiner and/or the investigator who had testified during the preliminary hearing. Subsequently, the trial court denied the appellant's motion.
Initially, we recognize that, in most instances, grand jury proceedings are not subject to discovery by the defense. "The long time rule, sanctioned by our courts, is that the proceedings before a grand jury are essentially secret." Steward v. State, 55 Ala.App. 238, 240, 314 So.2d 313, 315 (Ala.Crim.App.1975). In fact, the Legislature has specifically recognized the importance of protecting the sanctity of grand jury proceedings. Section 12-16-214, Ala.Code 1975, provides:
"The Legislature hereby finds, declares and determines that it is essential to the fair and impartial administration of justice that all grand jury proceedings be secret and that the secrecy of such proceedings remain inviolate. The provisions of this division are to be construed for the accomplishment of this purpose and to promote the following:
"(1) That grand juries have the utmost freedom in their discussions, deliberations, considerations, debates, opinions and votes without fear or apprehension that the same may be subsequently disclosed, or that they may be subject to outside pressure or influence or injury in their person or property as a result thereof.
"(2) That those persons who have information or knowledge with respect to the commission of crimes or criminal acts be encouraged to testify freely and truthfully before an appropriate grand jury without fear or apprehension that their testimony may be subsequently disclosed, or that they may be subject to injury in their person or property as a result thereof.
"(3) That those persons who have committed criminal acts or whose indictment may be contemplated not escape or flee from the due administration of justice.
"(4) That those persons falsely accused of criminal acts are not subject to public scrutiny or display and their otherwise good names and reputations are left intact."
Nevertheless, the secrecy of grand jury proceedings may be invaded in very limited situations.
"While it is true that broader discovery is to be allowed in cases involving capital murder because of the possible imposition of the death penalty, Ex parte Monk, 557 So.2d 832, 836-37 (Ala. 1989), a defendant must make a preliminary showing of particularized need before a court can balance this need against the policy favoring grand jury secrecy. Cf. In re Disclosure of Evidence, 650 F.2d 599, modified, 662 F.2d 362 (5th Cir.1981) (pursuant to Rule 6(e)(3)(C)(i), Federal Rules of Criminal Procedure, matters before a grand jury may be disclosed by court order preliminary to, or in connection with, a judicial proceeding when a showing has been made of `particularized need' and `compelling necessity'; however, the policies favoring the secrecy [of] grand juries must still be given weight. Id. at 601.).
"`Before a defendant is allowed to inspect a transcript of a State's witness who testified before the grand jury or before a trial judge should conduct an in camera inspection of such testimony, see Palermo [v. United *364 States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959)] and Pate [v. State, supra, 415 So.2d 1140 (Ala. 1981)], the defendant should at least and at a very minimum make some offer of proof (1) that the matters contained in the witness' grand jury testimony were relevant to the subject matter of the prosecution; (2) and that there exists an inconsistency between grand jury testimony and trial testimony. Unless defense counsel is merely going on a fishing expedition, he will have some information as to the particular inconsistency in the defendant's testimony. In this case no such showing was made and the existence of any inconsistency between the witness' trial and grand jury testimony was never even alleged. Cooks [v. State, supra, 50 Ala.App. 49, 276 So.2d 634 (1973)]. Also, there was no showing that the witness' grand jury testimony, if available, was "of such nature that without it the defendant's trial would be fundamentally unfair." Cooks, 50 Ala.App. at 54, 276 So.2d 634. See also Husch v. State, 211 Ala. 274, 276, 100 So. 321 (1924) ("Moreover, if the solicitor had had such a statement in his possession, defendant could have required its production by a rule of the court if he thought it was favorable to him.").
"`In laying the proper predicate for examination of a witness' grand jury testimony, it should also be established that the witness testified before the grand jury and that such testimony was recorded or reduced to writing, unless a grand juror will be called to disclose the testimony of the witness. Alabama Code 1975, Section 12-16-201.
"`"When the defendant, in effect, asks for the State District Attorney to produce a document, he should at least establish that this State official has such document or a copy thereof in his possession before the trial court will be put in error." Strange v. State, 43 Ala.App. 599, 606, 197 So.2d 437, cert. dismissed, 280 Ala. 718, 197 So.2d 447 (196[7]).
"`Once the defendant has laid a proper predicate for the impeachment of a witness who testified before the grand jury, the trial judge should conduct an in camera inspection as outlined in Palermo, supra, and Pate, supra, to determine (1) whether the statement made by the witness before the grand jury "differed in any respects from statements made to the jury during trial," Pate, supra, and (2) whether the grand jury testimony requested by the defendant "was of such a nature that without it the defendant's trial would be fundamentally unfair." Pate, supra. This procedure will best preserve and protect the legislative determination that "it is essential to the fair and impartial administration of justice that all grand jury proceedings be secret and that the secrecy of such proceedings remain inviolate." Alabama Code 1975, Sections 12-16-214 through 226.'
"Millican v. State, 423 So.2d 268, 270-71 (Ala.Cr.App.1982)."
Arthur v. State, 711 So.2d 1031, 1078-79 (Ala.Crim.App.1996), aff'd, 711 So.2d 1097 (Ala.1997).
A defendant cannot make the showing that is described in Millican until after a witness has testified at trial. Further, as the court recognized in Millican, part of establishing a predicate for examining a witness' grand jury testimony is establishing that that witness' grand jury testimony was recorded or reduced to writing. However,

*365 "[a] Grand Jury is not required to compile records and the testimony in the absence of [a] statute requiring preservation of the proceedings. State ex rel. Baxley v. Strawbridge, 52 Ala.App. 685, 296 So.2d 779. There is no such statute in this state."
Sommerville v. State, 361 So.2d 386, 388 (Ala.Crim.App.1978). Although preserving some record of grand jury proceedings is not required by Alabama law, it is apparently allowed. Specifically, § 12-17-275, Ala.Code 1975, provides, in pertinent part:
"When directed by the judge, [the official court reporter] shall attend the investigations of the grand jury and there take such notes of the testimony as directed by the district attorney or foreman."
Logically, if a court can order production of or inspection of grand jury proceedings after a witness testifies at trial, it could certainly order the preservation of the grand jury proceedings before they begin and subsequently determine whether it will order that part or all of those proceedings be produced to the defense or inspected for inconsistencies.
Under the facts of this case, the appellant made a threshold showing that the grand jury proceedings should be preserved. Specifically, he established that there was a genuine concern that there could be inconsistencies between the grand jury testimony and the trial testimony of the medical examiner and/or the investigator. Therefore, the trial court should have ordered that the grand jury proceedings be preserved in some fashion.[1] Subsequently, during the trial, if the defense requested access to grand jury testimony based on alleged inconsistent witness testimony, it could have evaluated the request in light of the standard set forth in Millican. Accordingly, we reverse the trial court's judgment and remand this case for proceedings that are consistent with this opinion.
REVERSED AND REMANDED.
COBB and WISE, JJ., concur; SHAW, J., dissents, with opinion, which McMILLAN, P.J., joins.
SHAW, Judge, dissenting.
I disagree with the majority's conclusion that the trial court committed reversible error in denying the appellant's motion to have the grand jury proceedings recorded.
With respect to the testimony of the coroner, the indictment contained in the record reflects that the coroner did not testify before the grand jury; the only witness listed on the indictment is the police investigator. Therefore, even if, as the majority holds, the trial court erred in denying the appellant's motion to have the coroner's testimony during the grand jury proceedings recorded, that error was not reversible; it was, at most, harmless.
Moreover, although the focus of the appellant's argument on appeal appears to be on the coroner, to the extent he is also arguing that the grand jury testimony of the investigator should have been recorded, I disagree with the majority's conclusion *366 that the appellant "established that there was a genuine concern that there could be inconsistencies between the grand jury testimony and the trial testimony of the ... investigator." At the hearing on the appellant's motion to have the grand jury proceedings recorded, the appellant's sole argument regarding the investigator was that he had lied during his testimony at the preliminary hearing. According to the appellant's counsel, the investigator testified at the preliminary hearing that he had gone to the scene of the crime and searched it with a metal detector in an attempt to find shell casings, but was unable to find any. Counsel asserted that she, too, had gone to the crime scene, and that because the grass at the scene was between three and five feet tall, she believed "there was no way" the investigator could have used a metal detector. (R. 29.) Counsel argued that because the investigator had testified falsely at the preliminary hearing, she believed he may do so again before the grand jury and that, therefore, the appellant was entitled to have the grand jury proceedings recorded for possible impeachment at trial.
Counsel's basis for requesting that the investigator's grand jury testimony be recorded was based on an assumption, unsupported by anything other than counsel's bare allegations, that the investigator testified falsely at the preliminary hearing. A transcript of the preliminary hearing is not contained in the record on appeal; therefore, I do not know what the investigator's testimony was or what questions were asked of the investigator. However, even taking counsel's factual allegations regarding the investigator's testimony at the preliminary hearing as true, the record does not support the assumption that the investigator testified falsely. Assuming, as the appellant argued, that the investigator testified at the preliminary hearing that he had used a metal detector, but did not testify regarding the length of the grass, this does not indicate false testimony; rather, it suggests only that the investigator was not asked about the length of the grass. The bare assertion of appellant's counsel, based only on her own personal belief, that because of the height of the grass, the investigator could not have used a metal detector does not establish, in my view, "a genuine concern" regarding possible inconsistencies in the investigator's testimony.
I also note that the record reflects that the investigator testified at trial that he had gone to the crime scene the day after the crime and had used both dogs and a metal detector in an attempt to find shell casings. He stated that the grass was "real high" and that it was difficult to conduct the search. (R. 164.) The investigator's testimony at the preliminary hearing was entirely consistent with his testimony at trial, and nothing in the record suggests that the investigator's testimony before the grand jury was any different. Under these circumstances, even if the trial court erred in denying the appellant's motion to have the grand jury proceedings recorded, any error was harmless.
Because I see no reversible error in the trial court's denying the appellant's motion to record the grand jury proceedings, I respectfully dissent.
McMILLAN, P.J., concurs.
NOTES
[1] We recognize that § 12-16-201, Ala.Code 1975, provides that "[a] grand juror may be required by any court to disclose the testimony of any witness examined before the grand jury for the purpose of ascertaining whether it is consistent with the testimony given by the witness before the court or on a charge of perjury against him." However, in most cases, a recording or transcript of the actual testimony would be more complete and reliable than a grand juror's testimony, and it would protect the anonymity of grand jurors. Also, if a trial court decided to grant access to a part of the grand jury proceedings, it could take further steps to protect the anonymity of the grand jurors by redacting their names or other portions of the proceedings that may reflect their identities.